UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KRISTINA THOMPSON,

    Plaintiff,

vs.

VILLAGE OF PHILLIPSBURG, *et al.*,

    Defendants.

Case No. 3:18-cv-214

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

### REPORT AND RECOMMENDATION[1] THAT (1) DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART; AND (2) PLAINTIFF'S § 1983 CLAIM, FOR FAILURE TO SUPERVISE AGAINST DEFENDANT WYSONG IN HIS PERSONAL CAPACITY, BE DISMISSED

---

This civil case is before the Court on the motion to dismiss filed by Defendants Village of Phillipsburg and Mark Wysong. Doc. 36. Plaintiff has filed a memorandum in opposition to Defendants' motion, and Defendants have filed a reply. Docs. 41, 43. The undersigned has carefully considered all of the foregoing, and Defendants' motion is now ripe for decision.

**I.**

This is a civil rights case in which Plaintiff asserts, *inter alia*, federal claims under 42 U.S.C. § 1983. Doc. 35. At the time of the events giving rise to Plaintiff's claims, Defendant Justin Sanderson ("Sanderson") worked as a police officer for the Village of Phillipsburg ("Phillipsburg"). Doc. 35 at PageID 215. Defendant Mark Wysong ("Wysong") was Phillipsburg's Chief of Police. *Id.* According to Plaintiff, Wysong was also employed by a private security company named G4S Security Solutions USA ("G4S"). In that capacity, Wysong hired

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Sanderson as a private security officer before he hired Sanderson as a Phillipsburg police officer. *Id.* at PageID 215, 219.

The crux of the allegations presented in this case are horrific and involve Defendant Sanderson raping, sexually assaulting, and/or battering Plaintiff in a Knights Inn Hotel room in Dayton, Ohio (hereinafter "the Hotel") on June 28, 2017 while he was on duty as a Phillipsburg police officer. Doc. 35 at PageID 215. This was not the first or the last sexual criminal activity Sanderson engaged in while on duty as a police officer for Phillipsburg, and he has since been convicted of multiple sex offenses as a result of this and other abhorrent sexual misconduct in the Montgomery County, Ohio Court of Common Pleas -- where he was sentenced to 43 years in prison. *See State v. Sanderson*, No. 28149, 2019 WL 4231369, at *1-5 (Ohio Ct. App. Sept. 6, 2019).

Plaintiff now brings this civil suit against Sanderson, as well as against Phillipsburg and Wysong in his individual and official capacities. Doc. 35. The motion to dismiss here at issue involves only the claims Plaintiff asserts against Phillipsburg and Wysong -- namely claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) alleging, *inter alia*, unconstitutional policies and procedures, inadequate screening of job applicants, and inadequate discipline of officers. Doc. 36. With regard to the *Monell* claims against Phillipsburg and Wysong, Plaintiff contends that Sanderson was hired as a Phillipsburg police officer despite a troubled past that allegedly includes him being fired and/or resigning from at least two other law enforcement jobs because of inappropriate sexual behavior. Doc. 35.

Specifically, Plaintiff alleges that Sanderson was fired from the Grandview Medical Center ("GMC") Police Department in 2014 after two months because he, *inter alia*, took a photograph of his erect penis and showed it to female nursing staff; made contact with a prostitute on several

2

occasions while on duty, including discussing with her the exchange of twenty dollars for oral sex; and displayed a handgun and his GMC police badge to a prostitute he invited into his police cruiser. *Id*. at 218. Sanderson was also allegedly suspended while employed by the Montgomery County, Ohio Juvenile Detention Center for accessing pornographic websites while on duty in 2009; allowing a male to enter the female housing unit in violation of facility policies; and for leaving his post while on duty for several hours in 2012. *Id*. at PageID 219-220. Sanderson was also previously discharged as a police recruit from the Dayton, Ohio Police Academy for misconduct -- *i.e.*, showing a pattern of doing the bare minimum and disregarding rules -- and was investigated for making inappropriate sexual comments, specifically asking a female recruit and another male recruit if they were "making love" during a training exercise. *Id*. at PageID 219.

Plaintiff contends that Phillipsburg, through Wysong, knew or should have known about these prior incidents because Wysong previously hired Sanderson as a private security officer in June of 2015 on behalf of G4S. *Id.* Plaintiff alleges that, during that hiring process, Wysong was informed of the contents of Sanderson's background check, including the prior misconduct. *Id.* at 219-221. In addition, when applying for the Phillipsburg position, Sanderson provided Phillipsburg and Wysong with the names, addresses, contact information, and dates of hire for his past employers, including the foregoing employers. *Id*. Plaintiff alleges that Sanderson falsely represented that he had never been asked to resign (or been given the opportunity to resign) from any employment position, and that he has only been reprimanded, suspended or terminated from G4S. *Id.*

Finally, Plaintiff alleges that, after hiring Sanderson, Wysong and Phillipsburg failed to provide Sanderson with any on-the-job training and Sanderson was not personally supervised during the majority of his shifts. PageID 221. Plaintiff contends that Phillipsburg had no police

cruisers equipped with cameras or body cameras for police officers and, because Sanderson was frequently the only officer on duty during his shifts, his police work was left largely unmonitored. *Id.*

## II.

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[T]he factual allegations must be specific enough to justify 'drag[ging] a defendant past the pleading threshold.'" *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the

4

complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

## III.

Phillipsburg and Wysong first argue that Plaintiff's claim for inadequate screening should be dismissed because the alleged constitutional violations were not an obvious consequence of Sanderson's hiring. Doc. 36 at PageID 241-42. As to Plaintiff's claim for failure to supervise and discipline, Defendants argue that Chief Wysong was not on notice of constitutional violations committed under his supervision and, consequently, could not have acted with deliberate indifference. *Id.* at 243. Finally, Defendants move to dismiss Plaintiff's claims against Wysong in his individual capacity on the grounds that he is entitled to qualified immunity. *Id.* at 245.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. Local government entities are considered persons under § 1983 and "may be sued for constitutional

deprivations." *Monell*, 436 U.S. at 690-91. However, such entities cannot be held liable for the acts of employees or officials on a *respondeat superior* theory. *Id.* at 693.

In other words, "a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015) (citing *Monell*, 436 U.S. at 694). Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To demonstrate *Monell* liability, one must: (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (internal citations omitted).

### A. Inadequate Screening

"Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record . . . there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). Municipality liability can be attributed to a single decision to hire only "where the decisionmaker possesses the final authority to establish policy with respect to the action ordered." *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 260 (6th Cir. 2015) (quoting, in part, *Monell*, 436 U.S. at 478). "To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Brown*, 520 U.S. at 410. In performing such a test, the Court must determine whether the inadequate screening amounted to not just negligence or recklessness, but "deliberate indifference." *Id.*

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* As the Supreme Court notes:

> Unlike the risk from a particular glaring omission in a training regimen, the risk from a single instance of inadequate screening of an applicant's background is not "obvious" in the abstract; rather, it depends upon the background of the applicant. A lack of scrutiny may increase the likelihood that an unfit officer will be hired, and that the unfit officer will, when placed in a particular position to affect the rights of citizens, act improperly. But that is only a generalized showing of risk. The fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation. After all, a full screening of an applicant's background might reveal no cause for concern at all; if so, a hiring official who failed to scrutinize the applicant's background cannot be said to have consciously disregarded an obvious risk that the officer would subsequently inflict a particular constitutional injury.

*Id.* at 410–11. Thus, to prevail on a failure-to-screen claim under § 1983, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision"; that is "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411.

Defendants argue that Plaintiff's § 1983 inadequate screening claim must be dismissed because Sanderson's background does not provide a sufficient nexus to the constitutional deprivations allegedly suffered by Plaintiff, *i.e.*, violations of her 4th and 14th Amendment rights. *See* PageID 240-42. Defendant's argument is without merit. Accepting Plaintiff's factual assertions as true, the undersigned finds that the plainly obvious consequence of hiring Sanderson, given his known background, was the constitutional deprivations alleged in the complaint. *Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 968 (6th Cir 2006) (inquiring whether

defendant's prior crimes "demonstrate any propensity to commit sex crimes or to imprison someone").

Before hiring Sanderson as a Phillipsburg police officer, Wysong first hired Sanderson as a security guard for G4S and, reviewed the information contained in a background check G4S ordered on Sanderson at that time. Doc. 35 at PageID 219-20. Consequently, Wysong allegedly hired Sanderson as a Phillipsburg police officer with actual knowledge of the following:

- Sanderson had been disciplined and suspended on multiple occasions while employed at the Montgomery County Jouvenile Detention center for, among other things, viewing pornographic web sites on his employer's computers while on duty, allowing a male to enter a unit, which housed juvenile female residents, and leaving his post on multiple occasions and leaving the detention center for extended periods of time;

- Within two months of beginning his employment at GMC, Sanderson took a photograph of his erect penis next to a can of hairspray and harassed female nursing staff members by displaying the photograph to them;

- GMC suspended Sanderson for an investigation of his violations of the hospital's conduct and discipline policy and its sexual harassment policy;

- Sanderson made contact with a prostitute on several occasions while on duty at GMC, including discussing with her the exchange of twenty dollars for oral sex and, on at least one occasion, displaying his police badge and gun to her;

- Sanderson resigned from GMC less than three months after starting there and while the investigation into his sexual misconduct was still pending;

- Sanderson had little or no prior on-the-job training as a police officer;

- Due to the size and budget of the Phillipsburg Police Department, Sanderson would frequently be the only police officer on duty during his shift and would not have any personal supervision; and

- The Village of Phillipsburg had no police cruisers equipped with dash cameras or body cameras for police officers.

*Id.* at PageID 220-21. Even if Wysong did not have actual knowledge, a cursory review of Sanderson's work history would have revealed Sanderson's prolific record of prior misconduct.

Indeed, Sanderson provided the names and contact information for the supervisors at his prior places of employment. *Id.* at PageID 220.

In light of the foregoing, Plaintiff sufficiently alleges that an adequate screening of Sanderson's background would have revealed that he was highly likely to engage in unauthorized searches and seizures and violations of bodily integrity, and that, even in the face of such an obvious risk, Wysong hired Sanderson. In a companion case filed with this Court, an inadequate screening claim against Wysong in his official capacity was not subject to 12(b) dismissal. *Brickles v. Village of Phillipsburg,* No. 3:18-cv-193, 2019 WL 3771874, at *4-8 (S.D. Ohio Aug. 9, 2019) *report and recommendation adopted* 2019 WL 4564743 (S.D. Ohio Sept. 20, 2019) (over Defendant's objections, finding a sufficient nexus between Sanderson's background and the constitutional violations to allow the inadequate screening claim to go forward). The underlying constitutional violations in the companion case involved similar misconduct by Sanderson. *Id.* The undersigned thus recommends that Defendant's motion to dismiss Plaintiff's inadequate screening claim be denied.

### B. Failure to Supervise and Discipline

Plaintiff also asserts a § 1983 claim against Wysong in his official and individual capacities for failure to supervise and discipline. Doc. 35 at PageID 227-28. Initially, the undersigned notes that Plaintiff fails to suggest or plead in the complaint that Wysong was present for, or otherwise knew about, the horrific events that occurred on June 28, 2017 or any other events here at issue. Because Wysong lacks direct involvement in Plaintiff's injury, Plaintiff's attempt to hold Wysong individually liable for his failure to adequately supervise Sanderson "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008); *see also Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 n.3 (6th

Cir. 2005) (treating a failure to supervise claim as an "official capacity" claim where Plaintiff did not allege that the defendants had "personal involvement in the alleged misconduct"). Thus, Plaintiff's claim for a failure to supervise is properly construed as a *Monell* claim against Wysong in his official capacity, *i.e.,* against the Village of Phillipsburg.[2] *Id.*

A municipality can be liable under § 1983 for inaction only where "an officially executed policy, or the toleration of a custom… leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cnty.,* 103 F.3d 495, 507 (6th Cir. 1996) (*citing Monell*, 436 U.S. at 690-91). Plaintiff can prove the existence of a municipality's illegal policy or custom of inaction through: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe*, 103 F.3d at 507.

Plaintiff first argues that Phillipsburg had a "custom" of failing to supervise or discipline its employees. Doc. 41 at PageID 275-76. A custom, for purposes of *Monell* liability, must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Absent a finding of a custom or pattern, Plaintiff alternatively contends that a policy of inaction was established through the single decision not to supervise Sanderson. Doc. 41 at PageID 277 (*citing Pembaur*, 475 U.S.at

---

[2] For this reason, the undersigned need not determine whether Defendant is entitled to qualified immunity from individual liability against a claim for a failure to supervise and discipline. While Defendant Wysong summarily asserts qualified immunity against all of Plaintiff's claims, he made substantive arguments regarding qualified immunity only against this claim. The undersigned therefore also makes no judgment as to whether Defendant is entitled to qualified immunity as to Plaintiff's other § 1983 claims.

480). Under either the "custom" or "single decision" theory of liability, a Plaintiff must show: (1) notice or constructive notice on the part of the defendant; (2) tacit approval of the unconstitutional conduct, such that Defendants' deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (3) that Defendant's custom was the moving force or the casual link in the constitutional deprivation. *Doe,* 103 F.3d at 508.

Because Plaintiff failed to state sufficient facts to satisfy the second prong -- a policy of deliberate indifference -- she cannot establish municipal liability for failure to supervise. "Deliberate indifference in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Id*. Indeed, the record must show that Phillipsburg "consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *Id*.

Here, there is no suggestion in the complaint that Wysong was actually confronted with Sanderson's deplorable conduct. Rather, Plaintiff asserts in her memorandum in opposition to Defendants' motion that Wysong failed to supervise Sanderson, and that had he done so, Sanderson's misdeeds would have been discovered and his rape of Plaintiff prevented. Doc. 41 PageID 276.

While this may be the unfortunate truth, opportunity, without reason to suspect that it will lead to a constitutional violation, does not establish deliberate indifference. *Mize v. Tedford*, 375 F. App'x 497, 501 (6th Cir. 2010); *D'Ambrosio v. Marino*, 747 F.3d 378, 388 ("Until the county had notice of persistent misconduct, it did not have 'the opportunity to conform to constitutional dictates,' nor could its inaction have caused the deprivation of [Plaintiff's] constitutional rights") (internal citations omitted). The complaint allegations, taken as true, assert that the lack of supervision over Sanderson was due less to a "conscious[] act[]," but more to a lack of resources

in the Phillipsburg Police Department. *Doe*, 103 F.3d at 508; doc. 35 at PageID 221 ("Due to the size and budget of the Phillipsburg Police Department, Sanderson would frequently be the only officer on duty"). Without a "deliberate choice to follow a course of action… from among various alternatives," the allegations are insufficient to state a custom or policy of the municipality. *Pembaur*, 475 U.S. at 483; s*ee also Brickles*, 2019 WL 3771874, at *9 (finding Plaintiff's failure to discipline claim subject to dismissal because "Wysong had no opportunity to discipline Sanderson until he learned about his nightmarish conduct").

### C. State Law Claims

Finally, Defendants move to dismiss state law claims that Wysong "negligently, maliciously, recklessly, and/or willfully breached [his] duty" to exercise a level of care that would have prevented Plaintiff's injuries. Doc. 35 at PageID 229. Political subdivision employees are generally entitled to immunity under Ohio law for state law claims asserted against them in their individual capacity. Ohio Rev. Code § 2744.03(A)(6). It is well settled that officials are entitled to immunity from claims of negligent hiring and training because the defense under Ohio Rev. Code § 2744.03(A)(5) applies. *Scott v. Dennis*, No. 94685, 2011 WL 94212, *2-4 (Ohio Ct. App. Jan. 6, 2011); *Lane v. Greater Cleveland R.T.A.,* No. 100829, 2014 WL 4460378, at *3 (Ohio Ct. App. Sept. 11, 2014). Immunity does not apply, however, where "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b).

To the extent Plaintiff alleges that Wysong's conduct in hiring, training, and supervising Sanderson rose to reckless conduct, Defendant is not entitled to immunity. Recklessness is characterized by "the conscious disregard of or indifference to a known or obvious risk of harm that is to another that is unreasonable under the circumstances." *Wrinn v. Ohio State Highway*

12

*Patrol*, No. 11AP-1006, 2013 Ohio App. LEXIS 1024, at *35 (Ohio Ct. App. Mar. 26, 2013) (*citing Hackathorn v. Preisse,* 663 N.E.2d 384, 386 (Ohio Ct. App. 1995)). The undersigned finds Plaintiff alleges sufficient facts to suggest that Wysong acted recklessly in hiring Sanderson. *Cf. Lane*, 2014 WL 4460378 at *3 (granting a motion to dismiss where Plaintiff failed to "allege that [the supervisor] acted with malicious purpose or in bad faith, or that it acted recklessly or wantonly in hiring or retaining [the employee]"). As discussed previously, due to Wysong's knowledge of Sanderson's notorious work history, Plaintiff sufficiently alleges that the risk of harm to third parties upon hiring him was obvious and that Wysong allegedly consciously disregarded that risk when he hired Sanderson. Thus, Plaintiff's claim against Wysong for his failure to adequately screen Sanderson should remain.

Plaintiff's state law claims for Wysong's failure to train and supervise should similarly stand. Again, Plaintiff need only establish that Wysong acted recklessly to pierce his shield of statutory immunity. While his training and supervising of Sanderson does not arise to the heightened level of a custom or policy for the purpose of § 1983 municipal liability, Wysong's failure to train or provide any oversight over Sanderson -- a novice police guard with a history of sexual misconduct -- does establish recklessness. *See Brickles*, 2019 WL 3771874, at *9 ("Wysong's position as Police Chief and his knowledge of Sanderson's previous misconduct while working in law enforcement should have alerted him to be on the lookout for any misconduct by Sanderson, the only subordinate police officer in Phillipsburg at that time. But this means that Wysong was negligent or reckless…."). Plaintiff's state law claims against Wysong should, therefore, not be subject to Rule 12(b) dismissal.

## IV.

In light of the foregoing, the undersigned **RECOMMENDS** that: (1) Defendant's motion to dismiss be **GRANTED** in part and **DENIED** in part; and (2) Plaintiff's § 1983 claim against Defendants Wysong and Phillipsburg, for a failure to supervise, train, or control, be **DISMISSED**.

Date:   December 5, 2019                       s/ Michael J. Newman
                                              Michael J. Newman
                                              United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).